## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

LORI WARD AND SHEILA FRANKLIN            **PLAINTIFFSS**

VS.            CIVIL ACTION NO.   3:24cv83-DMB-JMV

STATE FARM FIRE AND CASUALTY COMPANY            **DEFENDANT**

## COMPLAINT

## JURY TRIAL DEMANDED

COME NOW the Plaintiffs, Lori Ward and Sheila Franklin, and bring this Complaint against Defendant, State Farm Fire and Casualty Company, and for cause would show the following:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiffs, Lori Ward and Sheila Franklin, are adult resident citizens of Lee County, Mississippi.

2. Defendant, State Farm Fire and Casualty Company (hereinafter "State Farm") is a corporation organized and existing under the laws of the state of Illinois, with its principal place of business in Bloomington, Illinois. State Farm is authorized to sell homeowner and property insurance policies in the State of Mississippi and is engaged in the insurance business in the State of Mississippi. Said Defendant may be served with process by service on its

-1-

registered agent for service of process, United States Corporation Company, 109 Executive Drive, Suite 3, Madison, MS 39110.

3. For purposes of venue, the events giving rise to the claims that are the subject of this action occurred in whole or in part in this district.

4. Jurisdiction and venue are proper with this Court pursuant to Title 28 U.S.C. Section 1332 (Diversity of Citizenship).

## FACTS

5. Plaintiffs own a residence located at 1789 Summerlake Dr., Tupelo, Mississippi.

6. Policy number 24BUB1030 (the "Policy") was issued by State Farm insuring the property owned by Plaintiffs located at 1789 Summerlake Dr., Tupelo, Mississippi, for the period of December 30, 2022 through December 30, 2023. A copy of said policy is attached hereto as Exhibit "1" and is incorporated herein by reference.

7. The Policy provided insurance coverage for accidental direct physical loss to the dwelling located on the Insured Premises, except as specifically excluded or limited by the Policy. A copy of State Farm's policy renewal notice and policy coverage declarations is attached hereto as Exhibit "2."

8. The claims herein arise from certain direct physical loss to the insured property arising out of a fire loss which occurred at the insured property on

October 24, 2023, resulting in a total loss to the insured building, other structures and contents. State Farm inspected the property on November 6, 2023 and determined that the fire was a covered loss under the Policy.

9. A dispute has arisen between Plaintiffs and State Farm regarding the extent of the loss, the improper adjustment and payment of the claim and certain bad faith actions of State Farm.

10. State Farm prepared an estimate for repair of the building and determined the replacement cost value to be $349,422.67, which exceeds the Policy building limits of $326,080 under Coverage A – Dwelling. The State Farm estimate is attached hereto as Exhibit "3" and is incorporated herein by reference. Since the State Farm repair estimate exceeds the building limit it is unlawful to withhold depreciation. The building is a constructive total loss so the building limits are owed under Mississippi law.

11. The property has been inspected by several local builders and all agree that the building cannot be repaired for the amount of the estimate prepared by State Farm and all agree that the insured property is a constructive total loss.

Lynn Bryan, Managing Member of Lynn Bryan Construction, LLC stated:

> I have reviewed the State Farm estimate to repair your burned home and in my opinion the house is a constructive total loss considering the insurance building limit. In my opinion it cannot be repaired adequately for the amount of the State Farm estimate.

Tracy Taylor, owner of K&J Construction, LLC provided the following opinion:

> My company has walked through and inspected the home of Lori Ward at 1789 Summerlake Drive Tupelo, MS. Considering the amount of physical damage done to the home because of fire and also considering the unforeseen damage to the structure, it is my professional opinion that this home is a total loss. There is no safe or guaranteed way to rebuild or remodel this home and the cost of trying would be astronomical. I absolutely cannot recommend to the homeowner or insurance company to attempt to redo this dwelling.

Likewise, Jay Scruggs, President of Scruggs Homebuilders, LLC, stated:

> I have been asked to give a cost estimate/evaluation for Lori Ward at 1789 Summerlake Drive, Tupelo, 38801-6001. In my opinion the home is a total loss considering the cost to replace would far exceed the funds offered by State Farm to rebuild. Furthermore, there is obvious unknown damage due to fire and water which has created a visible mold issue. As a contractor, I cannot recommend for any client under these circumstances to move forward with repair. My recommendation is that the home be deemed a total loss.

Mark Simpson, managing member of Legacy Construction, LLC, gave the following opinion:

> Based on my site visit to the above address on 3/19/24, in my opinion, the residence is a complete loss, due to a fire that occurred on 10/24/23. I have been in the construction industry for 20 years, and based on my knowledge in the field, I feel that the home is not structurally sound enough to repair, thus I would recommend to demo the structure, and rebuild from scratch.

All of these reputable builders gave the same opinions – that the building is a complete loss and that they would not recommend attempting to repair. The written opinions of these professional builders who inspected the Plaintiffs'

-4-

property, which are attached hereto as Cumulative Exhibit "4" and incorporated herein by reference, were provided to State Farm by the Insureds, yet State Farm refused to consider these professional opinions.

12. Rather than determining the building to be a total loss under the Policy, State Farm determined that the property could be repaired, although the builders who inspected the building were of the opinion that the building could not be properly, adequately or safely repaired due to the extent of the damage.

13. In preparing the estimate of damage, State Farm used the Xactimate software which is widely used by insurance companies nationwide to adjust property loss claims and to calculate repair and construction costs for residential loss claims.

14. Xactimate is owned by Insurance Services Offices ("ISO"), a member of the Verisk Analytics family of companies. Xactimate is a cloud-based and ready to use online program which utilizes price lists and labor efficiencies which are periodically updated within the software and are specific to the general geographic location of the loss. Insurance companies, including Defendant State Farm, and construction companies use Xactimate's products to handle more than half of all property claims in the United States.

15. Xactimate updates its price lists monthly to account for market changes in the construction/remediation industry including availability of materials, supply and

demand, availability and cost of labor, and changes within the economy as a whole.

16. The default setting within Xactimate's software is "Restoration/Service/Remodel" (herein, "Restoration and Remodel"). Utilizing the New Construction setting requires an intentional selection of that particular setting by toggling from the default Restoration and Remodel setting to the New Construction setting in Xactimate's online platform.

17. In the context of insurance claim estimating, labor efficiency relates to the amount or intensity of labor necessary to perform the related task. In a restoration and remodel project, a given task requires additional steps not found in a new construction project. This results in a higher labor cost in the Restoration and Remodel setting.

18. Xactimate describes the New Construction option as providing a cost for each line item based upon the most efficient labor productivity available. This option is intended to be used for true new construction applications or for jobs in which a total "ground-up" rebuild is necessary.

19. Xactimate describes the Restoration/Service/Remodel option as being for jobs other than total losses or new construction. When selected, this option provides a cost for each line item based upon a labor productivity that includes such things as drive time, mobilization costs, material delivery, and the overall reduction in

productivity that occurs when repair professionals address the complex issues found in restoration and remodeling jobs.

20. Xactimate explains that the labor involved in the New Construction and Restoration and Remodel settings has an impact on pricing. The difference occurs when the restoration supporting events take into account an additional amount of time for "working in a restoration environment." Restoration and Remodeling projects are inherently more labor intensive and therefore, less efficient than a new construction project.

21. Although State Farm refused to declare the building a total loss and price the estimate as a ground up rebuild in adjusting Plaintiffs' claim, it affirmatively and unilaterally chose to utilize the New Construction setting within the software rather than the appropriate Restoration and Remodel setting, all the while telling the insured that the dwelling did not need to be torn down and built with new construction since it could be repaired and refurbished. Every builder who has inspected the property has disagreed with State Farm's position on this issue. This selection reduced the benefits to be paid by altering and suppressing the allowable labor and material costs necessary to remediate the loss. The New Construction setting, as opposed to the Restoration and Remodel setting, reduces the allowable labor and/or material charges for a specific task entry due to the additional materials and labor required to remediate a damaged property such as

the Insured Property of the Plaintiffs. If the appropriate input had been done by State Farm in the Xactimate estimate, even the ACV figure would have exceeded the building limit of $326,080 and would have therefore triggered all building limits of insurance for a total of $407,500 and would have allowed for payment of debris removal coverage in the amount of $20,375. State Farm shorted Plaintiffs $154,569.02 by using this fraudulent approach of manipulating Xactimate to base the damage estimate on New Construction while Xactimate expressly warned not to use the New Construction setting on an estimate for remediation of a damaged structure.

22. State Farm's use of the New Construction setting is an intentional manipulation of the software contrary to insurance industry standards and the software guidelines provided by Xactimate.

23. If State Farm had properly calculated the loss in Xactimate by utilizing the Restoration and Remodel setting, the value of the Plaintiffs' claim would have significantly increased and even the determination of the ACV of repair would have exceeded the building limit.

24. If State Farm had properly adjusted the claim, the value of the claim would have immediately exceeded the building limit for Coverage A and would have triggered the Inflation Coverage and Option ID for Coverage A – Building (and Coverage B – Personal Property) and the immediate value of Plaintiffs' building

claim would have been approximately $407,000 rather than the $273,305.98 payment made by State Farm. State Farm's manipulation of the Xactimate estimating tool resulted in a loss to Plaintiffs of $154,569.02 in building coverage and debris removal coverage in the amount of $20,375.

25. State Farm has failed and refused to acknowledge that all of the builders who have inspected the Plaintiffs' property have been of the opinion that the property is a constructive total loss and cannot be safely or adequately repaired for the amount of the estimate provided by State Farm.

26. State Farm has failed and refused to pay any amount whatsoever under the Policy for the for debris removal for razing the house and clearing the lot. Since the house is a total loss, $20,375 is owed to Plaintiffs and State Farm has refused to pay.

27. In addition to the building, all contents and personal property are a total loss. Plaintiffs have lost use of the residence since October 24, 2023 and have incurred costs for additional living expenses which have not been reimbursed by State Farm. The small percentage of ALE which was reimbursed was paid five months late after being promised within two weeks of receiving receipts. Moreover, State Farm, without any authority under the Policy, has wrongfully imposed a $30 per day cap on ALE in breach of its insurance contract with the Insureds.

## BREACH OF CONTRACT

28. Plaintiffs refer to all preceding paragraphs of the Complaint and incorporate them as if set forth in full herein.

29. The insurance policy attached hereto is a contract between the Plaintiffs and the defendant insurance company, State Farm. It requires timely and proper adjustment and payment of claims under the terms of the policy.

30. The adjustment of the damage caused by the fire loss at the property owned by Plaintiffs has been improper and untimely. The property is a constructive total loss yet State Farm has failed and refused to declare the property a total loss and pay the building and contents limits, the applicable inflation and ID coverage, or any amount for debris removal, although State Farm's estimate for repair in the amount of $349,422.67 exceeds the building limit of $326,080.00 under Coverage A in the policy.

31. State Farm intentionally manipulated the Xactimate software to prepare the loss estimate by utilizing the New Construction setting rather than the Restoration and Remodel setting, which is contrary to insurance industry standards and the software guidelines provided by Xactimate, all to the detriment of Plaintiffs.

32. State Farm's calculation of RCV and ACV by using the New Construction setting in Xactimate for Plaintiffs' claim and providing a repair estimate not taking into account the additional labor and/or material costs for restoration and repair, but

rather artificially and improperly excluding those costs from the repair estimate calculation, is a breach of State Farm's policy.

33. State Farm's hidden deduction of costs associated with the repair or replacement of Plaintiffs' property resulted in Plaintiffs receiving payment for the loss in an amount less than Plaintiffs were entitled to receive under the Policy. State Farm breached its obligations under the Policy by improperly reducing and/or excluding the necessary cost of labor.

34. The estimate State Farm provided to Plaintiff does not disclose State Farm's use of the incorrect labor efficiency or the resulting deduction in the estimate it created.

35. Plaintiffs have incurred substantial amounts for additional living expenses which are covered under the policy, and have provided receipts to State Farm for those expenses, yet State Farm failed and refused to make any payment whatsoever to Plaintiffs for additional living expenses until March 29, 2024, some five months after the loss. The payment made by State Farm for additional living expenses under Coverage C of the policy on March 29, 2024, was only a partial payment of ALE through December 2023. The additional living expenses continue to accrue and State Farm has denied payment of certain additional living expenses with no arguable or legitimate reason.

36. All damage initially caused by the fire loss, and exacerbated by the insurance company's unexplained delay and refusal to pay the full amount of the loss, are covered losses under the policy of insurance.

37. Defendant State Farm's apparent scheme throughout the adjusting process was to minimize the amount of loss, refuse to pay for the full amount of damage, and delay payment of insurance proceeds with no adequate explanation to Plaintiffs in order to starve the insured into a lower settlement of the valid insurance claim.

38. The loss and damage to Plaintiffs continually increase due to State Farm's delay, improper adjustment and failure to pay. Plaintiffs were forced to obtain assistance from legal counsel and incur additional expenses in order to receive any payment whatsoever from State Farm. Letters from Plaintiff's counsel to State Farm regarding the delay of payment and other issues are attached hereto as cumulative Exhibit "5" and are incorporated herein by reference. State Farm's letter of March 29, 2024, refusing and denying Plaintiffs' request to properly declare the dwelling a total loss is attached hereto as Exhibit "6" and is incorporated herein by reference.

## NEGLIGENT DELAY AND GROSSLY NEGLIGENT BAD FAITH IN THE ADJUSTMENT OF THE CLAIM AND DELAYED PAYMENT OF INSURANCE PROCEEDS BY DEFENDANT STATE FARM

39. Plaintiffs refer to all preceding paragraphs of the Complaint and incorporate them as if set forth in full herein.

40. Defendant, State Farm, had a duty to investigate the loss and promptly pay what was owed under the terms of the policy. The investigation and adjustment of the claim was negligent and grossly negligent because of the inadequacy of the investigation into the amount of damage caused by the fire loss, the manipulation of the repair estimate as "New Construction," the improper damage amounts offered to the Plaintiffs and the substantial delay in what little payment was made to Plaintiffs. Defendant, State Farm, had a duty to reasonably investigate and adjust the claim under the terms of the policy and that duty was breached, which causally affected the damages incurred by Plaintiffs.

41. Plaintiffs and their counsel have made repeated demands for proper adjustment and payment of the claim. State Farm's adjuster assigned to this claim has failed to communicate with the Insureds and their counsel and has lied about some of the excuses for not communicating.

42. This loss occurred more than five months ago. Only partial payment of the loss has been made by State Farm for this legitimate loss for the building, personal property and additional living expenses and no amount whatsoever has been offered or paid for debris removal for razing the house and clearing the lot. Only a portion of the damages incurred by Plaintiffs for loss of personal property and additional living expenses was paid after significant delay and repeated demands.

Because of this bad faith delay, intentional improper adjustment and failure to pay under the policy, without any reasonable excuse or arguable reason, Mississippi law allows the imposition of punitive damages in this case.

43. The building loss estimate determined by State Farm would not begin to cover the losses incurred by Plaintiffs or repair the building to its prior condition.

44. Plaintiffs strongly disagreed with State Farm's loss appraisal and requested that the defendant insurance company consider other information from reputable construction companies, but the defendant insurer, State Farm, refused.

45. Plaintiffs' damages due to the fire loss have multiplied due to the failure of defendant, State Farm, to properly adjust and pay the Plaintiffs' legitimate claim under the Policy within a reasonable amount of time, for the full amount of damage incurred and for all coverages available under the Policy.

46. Defendant, State Farm, is fully aware that the estimated building loss communicated to Plaintiffs is far less than the actual scope of damage caused by the fire loss to the insured property, and further knew that it was totally improper under the terms of the policy and the existing facts to determine such an inadequate estimate.

47. From the outset, it was apparent that State Farm was attempting to minimize, improperly adjust and delay the claim. Plaintiffs were aggrieved with the actions

of State Farm and therefore engaged an attorney to assist with the claim, incurring additional expense.

48. The gross negligence, bad faith and intentional misconduct of the insurer in failing and refusing to pay a legitimate loss, failing and refusing to properly adjust the loss and intentionally manipulating the Xactimate estimate are actions that are contrary to Mississippi law and clearly evidence bad faith and intentional misconduct without arguable reason which allow the imposition of punitive damages. The grossly negligent and bad faith claims handling has caused the Plaintiffs severe emotional and mental distress for which Plaintiffs seek all damages allowed by law.

## FRAUDULENT CONCEALMENT AND VIOLATION OF MISSISSIPPI LAW IN FAILING TO PROMPTLY, FAIRLY AND ADEQUATELY INVESTIGATE AND ADJUST THE CLAIM

49. Plaintiffs refer to all preceding paragraphs of the Complaint and incorporate them as if set forth in full herein.

50. Defendant, State Farm, fraudulently concealed its breaches of contract from Plaintiffs. The facts misrepresented, concealed, or otherwise not disclosed to Plaintiffs were material facts which Plaintiffs considered important in evaluating the insurance claim. The concealment of information was performed by State Farm with the intent that Plaintiffs would believe that the loss estimate prepared

by State Farm included all necessary repair and replacement costs, not costs based on new construction, which are significantly lower.

51. Defendant State Farm acted with gross negligence, bad faith and reckless disregard for the rights of Plaintiffs and contrary to the terms of the insurance policy sold to them in the investigation and adjustment of Plaintiffs' claim as outlined herein. These actions by State Farm are as a matter of law contrary to Mississippi law which requires that claims be handled in such a way as to be fair to the insured. An insurance company clearly has an obligation to promptly and unconditionally pay undisputed amounts owed. See, *Travelers Indem. Co. v. Wetherbee*, 368 So.2d 829 (Miss. 1979); *Haynes v. Anderson*, 597 So.2d 615, 622 (Miss. 1992) and *Universal Life Ins. Co. v. Veasley*, 610 So.2d 290, 297 (Miss. 1992), describing all of the bad faith actions and delays that an insurance company cannot perform to prevent liability for actual and punitive damages for denying or delaying valid claims. State Farm's delay and failure to pay the claims of Plaintiffs is in clear violation of Mississippi law.

52. An insurance company has a clear duty to promptly and adequately investigate a claim and State Farm has violated that duty. Similar to Plaintiff's claims, *Travelers Indem. Co. v. Wetherbee*, 368 So. 2d 829 (Miss. 1979) holds that an unreasonable delay of eight months in paying an insurance claim is sufficient for the imposition of punitive damages. As in the cases cited herein, State Farm

failed to conduct a reasonably prompt investigation of all relevant facts and is guilty of bad faith and subject to punitive damages.

WHEREFORE, PREMISES CONSIDERED, based upon all of the foregoing, Plaintiffs further demand judgment against the Defendant in the amount of Five Million Dollars ($5,000,000) as payment of all actual, extracontractual and consequential damages and damages for emotional and mental distress incurred by Plaintiffs due to the fire loss, loss of use of the building, all contents and personal property and debris removal and the Defendant's mishandling of the claim. Plaintiffs further demand judgment against Defendant in the amount of Five Million Dollars ($5,000,000) in punitive damages due to the actions and inactions of Defendant described herein, along with all costs, attorney's fees, pre-judgment interest, post-judgment interest and any other damages or costs deemed proper by this Court, for an amount sufficient to punish Defendant for its actions and to deter it from similar actions in the future, as a result of Defendant, State Farm's, bad faith delay, improper adjustment of the claim, intentional manipulation of the claim value and refusal to pay insurance proceeds properly due under the Policy.

Plaintiffs further demand trial by jury.

This the 5th day of April, 2024.

Respectfully submitted,

LORI WARD AND SHEILA
FRANKLIN, PLAINTIFFS


BY /s/ Michael D. Greer
       MICHAEL D. GREER
       MSB# 5002
       Counsel for Plaintiffs




GREER, RUSSELL, DENT & MOORE, PLLC
POST OFFICE BOX 907
TUPELO, MS 38802
TELEPHONE: (662) 842-5345
FAX: (662) 842-6870
EMAIL: mgreer@greerlawfirm.com