# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

**LORI WARD AND SHEILA FRANKLIN,**
individually and on behalf of all others similarly
situated                                                                    **PLAINTIFFS**

VS.                                    CIVIL ACTION NO. 3:24-CV-00083-DMB-JMV

**STATE FARM FIRE AND CASUALTY COMPANY**                    **DEFENDANT**

## AMENDED COMPLAINT – CLASS ACTION

## JURY TRIAL DEMANDED

COME NOW the Plaintiffs, Lori Ward and Sheila Franklin, individually and

on behalf of all others similarly situated, and bring this Amended Complaint against

Defendant, State Farm Fire and Casualty Company, and for cause would show the

following:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiffs, Lori Ward and Sheila Franklin, are adult resident citizens of Lee
   County, Mississippi.

2. Defendant, State Farm Fire and Casualty Company (hereinafter "State
   Farm") is a corporation organized and existing under the laws of the state of
   Illinois, with its principal place of business in Bloomington, Illinois. State
   Farm is authorized to sell homeowner and property insurance policies in

-1-

the State of Mississippi and is engaged in the insurance business in the State of Mississippi. Said Defendant may be served with process by service on its registered agent for service of process, United States Corporation Company, 109 Executive Drive, Suite 3, Madison, MS 39110.

3. Jurisdiction and venue are proper in this district. The events giving rise to the individual and class claims that are the subject of this action occurred in whole or in part in this district. This Court has personal jurisdiction, both general and specific, over State Farm and has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

FACTS

A. The Property and Loss

4. Plaintiffs own a residence located at 1789 Summerlake Dr., Tupelo, Mississippi.

5. Policy number 24BUB1030 (the "Policy") was issued by State Farm insuring the property owned by Plaintiffs located at 1789 Summerlake Dr., Tupelo, Mississippi, for the period of December 30, 2022 through December 30, 2023. A copy of said policy is attached hereto as Exhibit "1" and is incorporated herein by reference.

6. The Policy provided insurance coverage for accidental direct physical loss to the dwelling located on the Insured Premises. A copy of State Farm's

policy renewal notice and policy coverage declarations is attached hereto as Exhibit "2."

7. Plaintiffs paid premiums to State Farm in exchange for insurance coverage as more fully described in the Policy and coverage declarations.

8. The claims herein arise from certain direct physical loss to the insured property arising out of a fire loss which occurred at the insured property on October 24, 2023, resulting in a total loss to the insured building, other structures and contents; however, this lawsuit only concerns the property insurance coverage for buildings, and not the property insurance coverage for personal contents or additional living expenses.

9. State Farm inspected the Plaintiffs' property on November 6, 2023 and determined that the fire was a covered loss under the Policy. The Policy was in full force and effect at the time of the loss and there are no applicable exclusions.

10. A dispute has arisen between Plaintiffs and State Farm regarding the extent of the loss, the improper adjustment and payment of the claim and certain bad faith actions of State Farm.

11. State Farm prepared an estimate for repair of the building and determined the replacement cost value to be $349,422.67, **which exceeds the Policy building limits of $326,080** under Coverage A – Dwelling. The State Farm estimate is attached hereto as Exhibit "3" and is incorporated herein by reference.

12. The State Farm repair estimate exceeds the building limit; therefore it is unlawful to withhold depreciation. The building is a constructive total loss and the building limits are owed under Mississippi law, along with the limits for inflation coverage, Option ID coverage and debris removal.

13. The property has been inspected by several local very reputable builders and all agree that the Plaintiffs' property cannot be adequately restored to its pre-loss condition or repaired for the amount of the estimate prepared by State Farm and should be demolished and rebuilt. All agree that the insured property is a constructive total loss.

Lynn Bryan, Managing Member of Lynn Bryan Construction, LLC stated:

> I have reviewed the State Farm estimate to repair your burned home and in my opinion the house is a constructive total loss considering the insurance building limit. In my opinion it cannot be repaired adequately for the amount of the State Farm estimate.

Tracy Taylor, owner of K&J Construction, LLC provided the following opinion:

> My company has walked through and inspected the home of Lori Ward at 1789 Summerlake Drive Tupelo, MS. Considering the amount of physical damage done to the home because of fire and also considering the unforeseen damage to the structure, it is my professional opinion that this home is a total loss. There is no safe or guaranteed way to rebuild or remodel this home and the cost of trying would be astronomical. I absolutely cannot recommend to the homeowner or insurance company to attempt to redo this dwelling.

Likewise, Jay Scruggs, President of Scruggs Homebuilders, LLC, stated:

> I have been asked to give a cost estimate/evaluation for Lori Ward at 1789 Summerlake Drive, Tupelo, 38801-6001. In my opinion the home is a total loss considering the cost to replace would far exceed the funds offered by State Farm to rebuild. Furthermore, there is obvious unknown damage due to fire and water which has created a visible mold issue. As a contractor, I cannot recommend for any client under these circumstances to move forward with repair. My recommendation is that the home be deemed a total loss.

Mark Simpson, managing member of Legacy Construction, LLC, gave the following opinion:

> Based on my site visit to the above address on 3/19/24, in my opinion, the residence is a complete loss, due to a fire that occurred on 10/24/23. I have been in the construction industry for 20 years, and based on my knowledge in the field, I feel that the home is not structurally sound enough to repair, thus I would recommend to demo the structure, and rebuild from scratch.

All of these reputable builders gave the same opinions – that the building is a complete loss and that they would not recommend attempting to repair. The written opinions of these professional builders who inspected the Plaintiffs' property, which are attached hereto as Cumulative Exhibit "4" and incorporated herein by reference, were provided to State Farm by the Insureds, yet State Farm refused to consider these professional opinions.

14. Rather than considering the professional opinions and determining the building to be a total loss under the Policy regardless that its RCV estimate exceeded the building limits of the Policy by more than $23,000, State Farm determined that

the property could be repaired. State Farm ignored the opinions of the builders who inspected the building, all of whom were of the opinion that the building could not be properly, adequately or safely repaired due to the extent of the damage and that the building is a total loss or should be deemed a constructive total loss.

**B. State Farm's Manipulation of the Estimate of Damage to Reduce Amount of Loss**

15. In preparing the estimate of damage, State Farm used the Xactimate software which is widely used by insurance companies nationwide to adjust property loss claims and to calculate repair and construction costs for residential loss claims.

16. Xactimate is owned by Insurance Services Offices ("ISO"), a member of the Verisk Analytics family of companies. Xactimate is a cloud-based and ready to use online program which utilizes price lists and labor efficiencies which are periodically updated within the software and are specific to the general geographic location of the loss. Insurance companies, including Defendant State Farm, and construction companies use Xactimate's products to handle more than half of all property claims in the United States.

17. Xactimate updates its price lists monthly to account for market changes in the construction/remediation industry including availability of materials, supply and demand, availability and cost of labor, and changes within the economy as a whole and the price lists are specific to geographic locations.

18. The default setting within Xactimate's software is "Restoration/Service/Remodel" (herein, "Restoration and Remodel").   In the context of insurance claim estimating, labor efficiency relates to the amount or intensity of labor necessary to perform the related task. In a restoration and remodel project, a given task requires additional steps not found in a new construction project. This results in a higher labor cost in the Restoration and Remodel setting than in the New Construction setting.

19. Utilizing the New Construction setting in Xactimate requires an intentional selection of that particular setting by toggling from the default Restoration and Remodel setting to the New Construction setting in the online platform.

20. Xactimate describes the New Construction option as providing a cost for each line item based upon the most efficient labor productivity available. This option is intended to be used for true new construction applications or for jobs in which a total "ground-up" rebuild is necessary.

21. Xactimate describes the Restoration and Remodel option as being for jobs other than total losses which are being reconstructed from the ground up or new construction. When selected, this option provides a cost for each line item based upon a labor productivity that includes such things as drive time, mobilization costs, material delivery, and the overall reduction in productivity that occurs when

repair professionals address the complex issues found in restoration and remodeling jobs.

22. Xactimate explains that the different labor involved in the New Construction and Restoration and Remodel settings has an impact on pricing. The difference occurs when the restoration supporting events take into account an additional amount of time for "working in a restoration environment." Restoration and Remodeling projects are inherently more labor intensive and therefore, less efficient than a New Construction project.

23. Although State Farm refused to declare the Plaintiffs' building a total loss and price the estimate as a ground up rebuild in adjusting Plaintiffs' claim, it affirmatively and unilaterally chose to utilize the New Construction setting within the software rather than the appropriate Restoration and Remodel setting, all the while communicating to the insured its position that the dwelling should not be demolished and built with new construction and that it could be repaired and refurbished. Every builder who has inspected the property has disagreed with State Farm's position on this issue.

24. This "New Construction" selection in Xactimate, rather than the "Restoration and Remodel" setting reduced the benefits to be paid by altering and suppressing the allowable labor and material costs necessary to remediate the loss. If the appropriate construction setting had been used by State Farm in preparing the

Xactimate estimate, both the RCV and ACV figures would have exceeded the building limit of $326,080 and would have therefore triggered all building limits of insurance for a total of $407,500 and would have allowed for payment of debris removal coverage in the amount of $20,375. The RCV estimate provided by State Farm exceeded the building limit but the ACV estimate did not, due solely to State Farm's intentional use of the New Construction setting rather than the appropriate "Restoration and Remodel" setting.

25. If State Farm were to use the New Construction setting appropriately, it would have included line items in the Xactimate estimate to raze the building and rebuild the property from the ground up. Instead, it used the New Construction setting to prepare an estimate for repairing the portion of the building which remained intact, rather than utilizing the Restoration and Remodel setting for this type of estimate.

26. State Farm shorted Plaintiffs $154,569.02 by using this fraudulent approach of manipulating Xactimate to base the damage estimate on New Construction but not declaring the property a total loss, while Xactimate has expressly warned users such as State Farm to not use the New Construction setting for an estimate for remediation of a damaged structure.

27. State Farm's use of the New Construction setting is an intentional manipulation of the software contrary to insurance industry standards and the software guidelines provided by Xactimate.

28. State Farm's use of the New Construction setting rather than the Restoration and Remodel setting of the Xactimate software is further an intentional manipulation of the software for the sole purpose of reducing State Farm's estimate of the damage to Plaintiffs' building.

29. If State Farm had properly calculated the loss, the value of the Plaintiffs' claim would have significantly increased and even the determination of the ACV of repair would have exceeded the building limit under the Policy.

30. If State Farm had properly adjusted the claim, the value of the claim would have immediately exceeded the building limit for Coverage A and would have triggered the Inflation Coverage described on page 11 of the Policy and Option ID for Coverage A – Building (increased dwelling limit described on page 34 of the Policy) and the immediate value of Plaintiffs' building claim would have been approximately $407,000 rather than the $273,305.98 underpayment made by State Farm. State Farm's manipulation of the estimate resulted in a loss to Plaintiffs of $154,569.02 in building coverage and debris removal coverage in the amount of $20,375.

31. The subject fire resulted in extensive damage to Plaintiffs' property and the home was practically destroyed in the loss; however, the loss left intact some of the structural components of the insured dwelling. The loss did not result in an estimate by State Farm for a complete "ground up rebuild" as described by Xactimate in its labor efficiencies design for the New Construction setting in its software yet each builder who has inspected the property has given an opinion that the building should be completely rebuilt. The builders have also given opinions that the building cannot be repaired or restored for the amount of the estimate prepared by State Farm.

32. In the case of a loss where a portion of the structure remains standing or undamaged and the repairs would be a restoration or remodel project, a given task in the Xactimate program requires additional steps not found in a new construction project. This results in a higher labor cost in the restoration and remodel setting and a higher total estimate for repair. If State Farm had properly used the Restoration and Remodel setting in its estimate of Plaintiffs' loss, or had properly estimated the scope of damage, the ACV estimated repair cost (like the RCV estimate) would have exceeded the building coverage limit under the Policy.

33. State Farm has failed and refused to pay any amount whatsoever under the Policy for the for debris removal for razing the house and clearing the lot. Since the

house is a constructive total loss, $20,375 is owed to Plaintiffs for debris removal and State Farm has refused to pay or include this amount in its estimate.

34. State Farm's practice of undervaluing claims, refusing to declare properties such as Plaintiffs' a constructive total loss when their own estimate of loss exceeds the building limit and failing to apply and pay all coverages available under the Policy is inconsistent with the universally accepted premise that the fundamental purpose of property insurance is to provide indemnity to policyholders. To indemnify means to put the insured back in the position he or she enjoyed before the loss – no better and no worse.

35. Plaintiffs are certainly in a much worse position than prior to the loss. Their property has been destroyed by fire, State Farm has paid $273,305.98 under the Policy rather than the $407,000 of applicable coverage due, all builders who have inspected the property agree that it cannot be repaired or restored for the estimate of $349,422.67 alleged by State Farm, and State Farm has paid nothing for debris removal. Due to the actions of State Farm, Plaintiffs are stuck with a burned out building and insufficient funds to restore or replace it.

36. State Farm owes Plaintiffs the full amount of coverage under the policy - $407,000 – but has chosen to withhold these funds from Plaintiffs for its own financial gain.

## STATE FARM'S BREACH OF CONTRACT

37. Plaintiffs refer to all preceding paragraphs of the Complaint and incorporate them as if set forth in full herein.

38. The insurance policy attached hereto is a contract between the Plaintiffs and the Defendant insurance company, State Farm. It requires timely and proper adjustment and payment of claims under the terms of the policy.

39. The adjustment of the damage caused by the fire loss at the property owned by Plaintiffs has been improper and untimely. The property is a constructive total loss yet State Farm has failed and refused to declare the property a total loss and pay the building limits, the applicable inflation coverage, the applicable ID (increased dwelling) coverage, or any amount for debris removal, although State Farm's estimate for repair in the amount of $349,422.67 exceeds the building limit of $326,080.00 under Coverage A in the policy. While the estimate for repair exceeds the building limit, it is inadequate to cover the cost of repair or replacement of the building.

40. State Farm intentionally manipulated the Xactimate software to prepare the loss estimate by utilizing the New Construction setting rather than the Restoration and Remodel setting, which is contrary to insurance industry standards and the software guidelines provided by Xactimate, all to the detriment of Plaintiffs and for the purpose of undervaluing the claim.

41. State Farm's practice of calculating RCV and ACV by improperly using the New Construction setting in Xactimate rather than the Restoration and Remodel setting, and undervaluing damages so that Plaintiffs' claim and claims similar to that of Plaintiffs would be undervalued and not be determined to be a total loss under the Policy is a breach of the State Farm Policy.

42. The practice of State Farm in providing a repair estimate not taking into account the additional labor and/or material costs for Restoration and Repair, but rather artificially and improperly excluding those costs from the repair estimate calculation, is a breach of State Farm's Policy.

43. State Farm's practice of manipulating loss estimates so that the ACV repair estimate falls below the building coverage limits when the RCV estimate exceeds the building coverage is a breach of State Farm's Policy.

44. State Farm's hidden deduction of costs associated with the repair or replacement of Plaintiffs' property resulted in Plaintiffs receiving payment for the loss in an amount less than Plaintiffs were entitled to receive under the Policy.

45. State Farm has paid $273,305.98 under the Policy rather than the $407,000 of applicable coverage due and all builders who have inspected the property agree that it cannot be repaired or restored for the RCV estimate of $349,422.67 alleged by State Farm.

46. State Farm owes Plaintiffs the full amount of coverage under the policy - $407,000 – but has breached it Policy by withholding these funds from Plaintiffs for its own financial gain.

47. State Farm breached its obligations under the Policy by improperly reducing and/or excluding the necessary cost of labor and other damage in its estimate, failing to acknowledge and declare the building to be a constructive total loss, and by failing to provide inflation coverage, increased dwelling coverage and coverage for debris removal under the Policy.

48. If State Farm had properly estimated the loss, the immediate value of Plaintiffs' building claim would have been approximately $407,000 rather than the $273,305.98 underpayment made by State Farm. State Farm's manipulation of the Xactimate estimating tool resulted in a loss to Plaintiffs of $154,569.02 in building coverage and debris removal coverage in the amount of $20,375.

49. The estimate State Farm provided to Plaintiffs does not disclose State Farm's breach of the Policy by its use of the incorrect labor efficiency setting of New Construction, any other hidden deductions, or the resulting reduction in the estimate it created.

50. An insurer may not lawfully deduct repair and replacement benefits when calculating an ACV payment owed to an insured. State Farm's deduction of benefits and failure to pay the full cost of the work required to return Plaintiffs

back to their pre-loss condition, or at least pay Policy limits for the constructive total loss, is a breach of the Policy.

51. State Farm misrepresented, concealed or otherwise did not disclose to Plaintiffs material facts and information regarding the calculations of its loss estimate with the intent that Plaintiffs would believe that the loss estimate was accurate rather than being diminished by State Farm's intentional manipulation of the Xactimate software and calculating the loss as New Construction.

52. Defendant, State Farm, had a duty to investigate the loss and promptly pay what was owed under the terms of the policy. The investigation and adjustment of the claim was negligent and grossly negligent because of the inadequacy of the investigation into the amount of damage caused by the fire loss, the manipulation of the repair estimate as "New Construction," the improper damage amounts offered to the Plaintiffs and the substantial delay in what little payment was made to Plaintiffs. Defendant, State Farm, had a duty to reasonably investigate and adjust the claim under the terms of the Policy and that duty was breached, which causally affected the damages incurred by Plaintiffs.

53. Plaintiffs and their counsel have made repeated demands for proper adjustment and payment of the claim. State Farm's adjuster assigned to this

claim has failed to communicate with the Insureds and their counsel and has lied about some of the excuses for not communicating.

54. This loss occurred on October 23, 2023. Only partial payment of the loss has been made by State Farm for this legitimate loss for the building and no amount whatsoever has been offered or paid for debris removal for razing the house and clearing the lot. Because of State Farm's breach of contract, bad faith delay, intentional improper adjustment and failure to pay under the policy without any reasonable excuse or arguable reason, Mississippi law allows the imposition of punitive damages in this case.

55. Plaintiffs' damages due to the fire loss have multiplied due to the failure of Defendant, State Farm, to properly adjust and pay the Plaintiffs' legitimate claim under the Policy within a reasonable amount of time, for the full amount of damage incurred and for all coverages available under the Policy.

56. Defendant, State Farm, is fully aware that the estimated building loss communicated to Plaintiffs is far less than the actual scope of damage caused by the fire loss to the insured property, and further knew that it was totally improper under the terms of the Policy and the existing facts to determine such an inadequate estimate.

57. From the outset, it was apparent that State Farm was attempting to minimize, improperly adjust and delay the claim. Plaintiffs were aggrieved with the actions

of State Farm and therefore engaged an attorney to assist with the claim, incurring additional expense.

58. The gross negligence, bad faith and intentional misconduct of the insurer in failing and refusing to pay a legitimate loss, failing and refusing to properly adjust the loss and intentionally manipulating the Xactimate estimate are actions that are contrary to Mississippi law and clearly evidence bad faith and intentional misconduct without arguable reason which allow the imposition of punitive damages.

59. The grossly negligent and bad faith claims handling has caused the Plaintiffs severe emotional and mental distress for which Plaintiffs seek all damages allowed by law.

60. Defendant, State Farm, fraudulently concealed its breaches of contract from Plaintiffs. The facts misrepresented, concealed, or otherwise not disclosed to Plaintiffs were material facts which Plaintiffs considered important in evaluating the insurance claim. The concealment of information was performed by State Farm with the intent that Plaintiffs would believe that the loss estimate prepared by State Farm included all necessary repair and replacement costs, not costs based on new construction, which are significantly lower.

61. Defendant State Farm acted with gross negligence, bad faith and reckless disregard for the rights of Plaintiffs and contrary to the terms of the Policy sold to

them in the investigation and adjustment of Plaintiffs' claim as outlined herein. These actions by State Farm are as a matter of law contrary to applicable law which requires that claims be handled in such a way as to be fair to the insured. An insurance company clearly has an obligation to promptly and unconditionally pay undisputed amounts owed.

62. An insurance company has a clear duty to promptly and adequately investigate a claim and State Farm has violated that duty. State Farm's delay and failure to pay the claims of Plaintiffs is in clear violation of Mississippi law.

63. A certified class action styled *Mitchell v. State Farm Fire and Casualty Company*, Civil Action No. 3:17-CV-00170-MPM-RP, was filed on June 23, 2017, on behalf of a class of State Farm insureds with structural loss claims in Mississippi alleging that State Farm improperly calculated and withheld depreciation through use of Xactimate's "Depreciation Options" to allegedly improperly underpay, or refuse to pay, ACV payments under homeowners' insurance policies. This Court approved a settlement of the class action by Final Judgment and Order of February 25, 2021, a copy of which is attached hereto as Exhibit "5" and incorporated herein by reference.

64. State Farm's actions outlined herein are very similar to the tactics complained of in *Mitchell*. Apparently the multi-million dollar settlement in *Mitchell* was not enough to cause State Farm to change its tactics or to discontinue attempting to

improperly underpay or refuse to pay proceeds properly payable to insureds such as the Plaintiffs. State Farm's continued refusal to act responsibly and fairly toward its policyholders should require the imposition of punitive damages in an amount sufficient to deter this continued type of behavior.

## AMOUNT IN CONTROVERSY

65. The amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

### A. Mississippi Damages and Injunctive Relief Class

66. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this suit as a Mississippi class action on behalf of themselves and on behalf of all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality and adequacy of representation. Only to the extent it is a requirement under applicable law, the class is ascertainable.

67. The proposed class that Plaintiffs seek to represent is defined as follows:

> All State Farm homeowner policyholders who made a structural damage claim for property located in the state of Mississippi which was not designated a "total loss" by State Farm, but whose RCV estimate exceeded the building limits and who did not receive the full limits of applicable coverage, and whose ACV and RCV payments were calculated by application of "New Construction" labor efficiency setting in Xactimate, or whose ACV or RCV payments or estimates were not properly calculated under the State Farm policy, from April 10, 2021, to the date of trial, inclusive.

68. Plaintiffs reserve the right to amend the definition of the proposed class. The following persons are expressly excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

69. Members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the State Farm policies.

70. Certain amounts initially withheld as depreciation may be or may have been later repaid to policyholders upon further adjustment of the claim; however, policyholders who have been subsequently repaid for amounts initially withheld for repair and replacement costs by use of the New Construction setting in Xactimate, or otherwise, when their losses exceeded the policy limits, have still incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, i.e., interest, which State Farm kept for its own and profited from.

71. State Farm has undervalued the claims of many of the policyholders and not provided payment for all available coverages under the policies of insurance.

72. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that thousands of people

geographically dispersed have been damaged by State Farm's actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by State Farm or from information readily available to State Farm.

73. The relatively small amounts of damage suffered by some members of the proposed class make filing separate lawsuits by individual members economically impracticable.

74. State Farm has acted on grounds generally applicable to the proposed class in that State Farm has routinely undervalued claims, deducted repair and replacement costs as described herein in its adjustment of property damage claims under its policies of insurance and refused to declare claims a total loss when the estimated cost of repair exceeds the policy building limits.. It is reasonable to expect that State Farm will continue to use this practice to reduce the amount it pays to its insureds under these policies absent a decision by the Court.

75. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a. Whether State Farm's policy language allows State Farm to deduct repair and replacement costs in its calculation of ACV payments by applying "new construction" settings to claims;

b. Whether State Farm's policy language is ambiguous concerning the deduction of repair and replacement costs in calculating ACV payments, and, if so, how State Farm's insurance policies should be interpreted;

c. Whether State Farm's deduction of repair and replacement costs in its calculation of ACV payments when the RCV estimate exceeds the policy coverage limits breaches the insurance contract;

d. Whether State Farm has a custom and practice of deducting repair and replacement costs in its calculation of ACV payments;

e. Whether State Farm has a custom and practice of applying depreciation to claims which are a constructive total loss and the loss exceeds the policy building coverage limits and whether such custom and practice is a breach of the State Farm policies and applicable law;

f. Whether State Farm has violated Miss. Code Ann. § 83-13-5, the Mississippi valued policy law, in its administration of Plaintiffs' claims and the claims of those similarly situated, and whether State Farm has a custom and practice of doing so;

g. Whether Plaintiffs and members of the proposed class have been damaged as a result of State Farm's deduction of repair and replacement costs in its calculation of ACV payments;

h. Whether Plaintiffs and members of the proposed class have been damaged as a result of State Farm's manipulation of loss estimates so that they did not receive the full limits of applicable coverage under the State Farm policies of insurance;

i. Whether Plaintiffs and members of the proposed class have been damaged as a result of State Farm's application of the "New Construction" labor efficiency setting in Xactimate;

-23-

j. Whether Plaintiffs and members of the proposed class have been damaged as a result of State Farm's failure or refusal to properly calculate their losses under the State Farm policies of insurance;

k. Whether State Farm's policy language is ambiguous concerning the calculation of losses, depreciation, and applicable coverages in the event of a constructive total loss;

l. Whether State Farm has a practice and custom of undervaluing claims and manipulating estimates for the purpose of financial gain;

m. Whether Plaintiffs and members of the proposed class have been damaged by State Farm's intentional manipulation of loss estimates to reduce the amounts owed under their policies;

n. Whether Plaintiffs and members of the proposed class have been damaged by State Farm's concealment of its tactics used to undervalue claims;

o. Whether Plaintiffs and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act;

p. Whether Plaintiffs and members of the proposed class are entitled to equitable relief in the form of specific performance, unjust enrichment, declaratory relief or restitution damages;

q. Whether Plaintiffs and members of the proposed class are entitled to punitive damages; and

r. Whether Plaintiffs and members of the proposed class are entitled to attorney's fees and intermediate damages.

76. Plaintiffs' claims are typical of the claims of all proposed class members, as they are all similarly affected by State Farm's custom and practice concerning deduction of repair and replacement costs, not paying the full limits of applicable

-24-

coverage, refusal to declare claims a total loss or constructive total loss when the repair estimates exceed the building limits, inappropriately calculating loss estimates by application of the "New Construction" labor efficiency setting in Xactimate, or otherwise inappropriately calculating or undervaluing ACV or RCV payments or estimates under the State Farm policies.

77. Further, Plaintiffs' claims are typical of the claims of all proposed class members because their claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same factual and legal theories. Plaintiffs are not different in any material respect from any other member of the proposed class.

78. In an effort to materially advance the litigation as a whole, pursuant to Rule 23(c)(4), Plaintiffs bring this action on behalf of themselves and of all others similarly situated to resolve these common issues.

79. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained counsel who are competent and experienced in class action and insurance litigation. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and will

diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

80. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed class members in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if proposed class members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

81. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

82. Questions of law or fact common to Plaintiffs and the proposed class members, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amounts due to many individual proposed class members are likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual proposed class members to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by State Farm's unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

83. Class certification is further warranted because State Farm has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## B. Mississippi Issues Class

84. Plaintiffs seek, in the alternative or prior to certification of a Mississippi Damages and Injunctive Relief Class, a Mississippi Issues Class.

85. Rule 23(c)(4), F.R.C.P., provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

86. In an effort to materially advance the litigation as a whole, pursuant to Rule 23(c)(4), Plaintiffs bring this action on behalf of themselves and of all others similarly situated to resolve, *inter alia*, several important issues:

   a. Whether State Farm's policy language allows State Farm to deduct repair and replacement costs in its calculation of ACV payments by applying "new construction" settings to claims;

   b. Whether State Farm's policy language is ambiguous concerning the deduction of repair and replacement costs in calculating ACV payments, and, if so, how State Farm's insurance policies should be interpreted;

   c. Whether State Farm's deduction of repair and replacement costs in its calculation of ACV payments when the RCV estimate exceeds the policy coverage limits breaches the insurance contract;

   d. Whether State Farm has a custom and practice of deducting repair and replacement costs in its calculation of ACV payments;

   e. Whether State Farm has a custom and practice of applying depreciation to claims which are a constructive total loss and the loss exceeds the policy building coverage limits;

   f. Whether State Farm has a custom and practice of violating Miss. Code Ann. § 83-13-5, the Mississippi valued policy law, in its administration of Plaintiffs' claims and the claims of those similarly situated;

g. Whether State Farm's policy language is ambiguous concerning the calculation of losses, depreciation, and applicable coverages in the event of a constructive total loss;

h. Whether State Farm has a practice and custom of undervaluing claims and manipulating estimates for the purpose of financial gain;

i. Whether State Farm has a practice and custom of intentionally manipulating loss estimates to reduce the amounts owed under their policies;

j. Whether State Farm has a practice and custom of concealing its tactics used to undervalue claims;

k. Whether Plaintiffs and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act; and

l. Whether any of State Farm's potential affirmative defenses apply in whole or in part.

87. The Issues Class would be "carved at the joints" after disposition of the preliminary questions concerning State Farm's liability for breaching its contractual duties to Plaintiffs and members of the proposed class. The individual class members would then be able to rely upon the preclusive effect of the determination that State Farm's customs and practices outlined above are unlawful to then individually litigate specific issues such as damages. Alternatively, the Court could thereafter certify a Mississippi Damages and Injunctive Relief Class.

88. The Issues Class is properly brought and should be maintained as a class action under Rule 23(a), F.R.C.P., satisfying the class action prerequisites of numerosity, commonality, typicality and adequacy.

89. Individual joinder of the members of the Issues Class would be wholly impracticable. Plaintiffs reasonably believe that thousands of policyholders geographically dispersed across Mississippi have been damaged by State Farm's conduct as described herein. Thus, the numerosity element for class certification is met.

90. Questions of law and fact are common to the Issues Class. As this is an issues class under Fed. R. Civ. P. Rule 23(c)(4), there are by definition common questions of law applicable to all class members.

91. Plaintiffs' claims are typical of the Issues Class because their claims arise from the same course of conduct by State Farm, *i.e.*, its uniform custom and practice of undervaluing claims by wrongful application of the "New Construction" labor efficiency setting in Xactimate, or by otherwise manipulating the ACV or RCV payments or estimates under their policies, and refusing to declare claims a "total loss" or pay the full limits of applicable coverage when State Farm homeowner policyholders made a structural damage claim for property located in the state of Mississippi whose RCV estimate exceeded the building limits. The Plaintiffs' claims and the claims of the potential class members are based on the same

factual and legal theories and Plaintiffs' claims are, therefore, typical of the Issues Class.

92. Plaintiffs interest in vindicating these claims is shared with all members of the Issues Class and there are no conflicts between the named Plaintiffs and the putative class members. Plaintiffs will fairly and adequately represent and protect the interests of the Issues Class. Additionally, Plaintiffs are represented by counsel who are competent and experienced in class litigation and also have no conflicts.

93. Pursuant to Rule 23(b)(3), common issues predominate over any questions affecting only individual class members. The Issues Class is properly brought and should be maintained as a class action under Fed. R. Civ. P. Rule 23(b) because an issues class action in this context is superior to other methods for fair and efficient adjudication of this controversy. Such treatment will allow a large number of similarly-situated policyholders to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload

court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

## COUNT I - BREACH OF CONTRACT

94. Plaintiffs restate and incorporate by reference all preceding allegations.

95. State Farm entered into policies of insurance with Plaintiffs and members of the proposed class. These insurance policies govern the relationship between State Farm, Plaintiffs and members of the proposed class, as well as the manner in which claims for covered losses are handled.

96. The policies of insurance between State Farm and Plaintiffs and the other proposed class members are binding contracts under Mississippi law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

97. State Farm drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation.

98. In order to receive claim payments, Plaintiffs complied with all material provisions and performed all of their respective duties with regard to their insurance policies.

99. State Farm breached its contractual duty to pay Plaintiffs and members of the proposed class the full value of their claims by unlawfully manipulating loss

estimates and failing and refusing to pay the full value of the claims under the policies.

100.    State Farm's actions in breaching its contractual obligations to Plaintiffs and members of the proposed class benefited and continues to benefit State Farm. Likewise, State Farm's actions damaged and continues to damage Plaintiffs and members of the proposed class.  Additionally, State Farm breached the Policy by failing and refusing to promptly pay the amounts individually owed to Plaintiffs as required by the terms of the Policy. As a result, Plaintiffs have been damaged in the amount of the unpaid portion of the claim, including but not limited to the building limit under the Coverage A, the inflation coverage, the ID coverage and debris removal coverage.

101.    State Farm's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and members of the proposed class.

102.    In light of the foregoing, Plaintiffs and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts State Farm unlawfully withheld from their loss payments.

103.    Plaintiffs and members of the proposed class seek any and all relief as may be permitted under Mississippi law to remedy the ongoing breaches of contract.

## COUNT II
## NEGLIGENCE AND/OR GROSS NEGLIGENCE

104.    Plaintiffs restate and incorporate by reference all preceding allegations.

105.    State Farm had a duty under Mississippi law and pursuant to the policies issued to Plaintiffs and the proposed class members to fully, fairly, adequately and correctly investigate and adjust losses and claims.

106.    State Farm breached that duty in the following non-exclusive particulars:

a.    By failing to conduct a reasonable and lawful adjustment of Plaintiffs' and the proposed class members' claims;

b.    By refusing to fully pay Plaintiffs' and the proposed class members' actual cash value claim, replacement value claim and total loss or constructive total loss claim without conducting a complete, adequate, full, and fair investigation and adjustment of Plaintiffs' claim for damage under the Policy;

c.    By failing to fully and appropriately pay Plaintiffs and the proposed class members for their loss;

d.    By arbitrarily deducting repair and replacement costs as described herein on Plaintiffs' and the proposed class members' claims contrary to the policies and the law;

e.    By failing to acknowledge and pay the true actual cash value of Plaintiffs' and the proposed class members' insured losses;

    f.   By interpreting the Policies issued to Plaintiffs and the proposed class members' in an arbitrary and capricious manner, and contrary to the plain meaning and intent of the Policy in an effort to avoid, and intentionally withhold, payment for the full extent of their losses; and

    g.   By other acts and omissions to be proven at trial.

107.   Such conduct as alleged above constitutes negligence, gross negligence, and/or reckless disregard for Plaintiffs' and the proposed class members' rights as insureds.

108.   State Farm's negligent, grossly negligent, and/or reckless adjustment proximately caused Plaintiffs and the proposed class members economic damages, including attorney's fees and litigation expenses.

## <u>COUNT III – BAD FAITH</u>

109.   Plaintiffs restate and incorporate by reference all preceding allegations.

110.   State Farm had a duty to exercise good faith in dealing with Plaintiffs and the proposed class members. State Farm's failure and refusal to pay the amounts contractually owed to Plaintiffs and the proposed class members was arbitrary and capricious and constitutes bad faith. State Farm's actions constitute the independent tort of bad faith refusal to pay an insurance claim in that State Farm failed to properly adjust and fully pay covered insurance claims without legitimate or arguable reason for doing so.

111.    The bad faith of State Farm is evidenced by the fact that, at all times hereto, State Farm knew, or reasonably should have known, that Plaintiffs and the proposed class members were justifiably relying on the money and benefits due them under the terms of their policies and the law, as well as the actions of State Farm as set forth in the paragraphs above and below. Nevertheless, acting with conscious disregard for Plaintiffs and the proposed class members' rights and with the intention of causing or willfully disregarding the probability of causing unjust hardship on Plaintiffs and the proposed class members, State Farm intentionally and willfully manipulated the claims and refused to fully pay Plaintiffs and the proposed class members' valid claims and withheld monies and benefits rightfully due them. State Farm was obligated to fully pay Plaintiffs and the proposed class members for their damages associated with the admittedly covered loss but failed to do so. State Farm lacked an arguable or legitimate basis in law and fact for its refusal and failure to fully pay Plaintiffs and the proposed class members for their losses, and State Farm knew there was no arguable, legitimate, or justifiable basis for its refusal and failure to fully pay Plaintiffs and the proposed class members for their losses. Further, State Farm acted with malice and/or gross negligence/reckless disregard to Plaintiffs and the proposed class members' rights under each policy and existing law and profited from the aforesaid conduct to the detriment of Plaintiffs and the proposed class members.

112.    At all material times, State Farm owed to Plaintiffs and the proposed class members as policyholders, claimants and insureds under each Policy a non-delegable, express, and implied duty, to at all times and in all things, act in good faith and with fair dealing toward Plaintiffs and the proposed class members. Along with the duty of good faith and fair dealing, State Farm owed at all times a duty to: (1) meet the reasonable expectations of Plaintiffs as policyholders; (2) investigate and pay the claim with the interest of the insured in mind and keeping the insured informed every step of the way; (3) give as much if not greater consideration to the financial interests of the insured, than it gave to its own financial interests; and (4) perform a prompt and adequate investigation and make a reasonable, good faith payment based on that investigation.

113.    State Farm breached the aforementioned duties, including the overarching duty to exercise good faith and fair dealing with Plaintiffs and the proposed class members as policyholders, claimants and insureds. State Farm's bad faith is evidenced by all of the facts and allegations set forth above in this Complaint, together with the following non-exclusive actions or inactions by State Farm which were perpetuated with nefarious motives or with reckless indifference to the rights of Plaintiffs and the proposed class members:

    a. State Farm's intentional or reckless failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of the claims of Plaintiffs

and the proposed class members when liability and the amount owed was reasonably clear;

b.  State Farm's intentional or reckless refusal to pay the full value of the Plaintiffs' loss under the terms of the Policy and the losses of the proposed class members  and to otherwise honor its obligations under the policies of insurance;

c.  State Farm's intentional refusal to fully and fairly investigate and pay the full value of the claims of Plaintiffs and the proposed class members;

d.  State Farm's intentional or reckless failure to properly adjust the claim of Plaintiffs and the proposed class members, and to pay Plaintiffs and the proposed class members the full amounts owed to them for their losses;

e.  State Farm's intentional or reckless failure to fully inform Plaintiffs and the proposed class members of their rights under the subject insurance policies;

f.  State Farm's intentional or reckless concealment from Plaintiffs and members of the proposed class of its practice of incorrectly adjusting claims for profit and against the interests of Plaintiffs and the proposed class;

g. State Farm's intentional or reckless failure to pay all amounts due and owing under the Plaintiff's Policy and under the policies of the proposed class members with no reasonable or justifiable basis;

h. State Farm's offering of substantially less than the amount actually owed in an effort to increase profits and deprive Plaintiffs and the proposed class members of their rights under each of their policies of insurance;

i. State Farm's intentional or reckless denial or refusal to pay full policy limits for building coverage, inflation coverage, debris removal and ID coverage for the claims of Plaintiffs and the proposed class members' claims with no honest disagreement or innocent mistake concerning the validity or the nature and amount of their claims; and

j. Other acts and omissions to be proven at trial.

114. State Farm's actions and omissions as set forth herein are the direct and proximate cause of actual damages and consequential damages sustained by Plaintiffs and the members of the proposed class.

115. State Farm knew, or reasonably should have known, that Plaintiffs and the proposed class members were justifiably relying on the money and benefits due them under the terms of the subject insurance policies. Nevertheless, acting with conscious disregard for the rights of Plaintiffs and the proposed class members and with the intention of causing or willfully disregarding the probability of

causing unjust and cruel hardship, State Farm consciously refused to fully compensate Plaintiffs and the proposed class members for their losses and withheld monies and benefits rightfully due Plaintiffs and the proposed class members. In so acting, State Farm intended to and did injure Plaintiffs and the proposed class members in order to protect its own financial interests.

116.    As a result of State Farm's breach of the duty to exercise good faith and fair dealing and bad faith denial of full and prompt payment as required by law and the policy, Plaintiffs are entitled to a judgment against State Farm for actual, compensatory, consequential, bad faith, and punitive damages, along with court costs, attorney's fees, and pre- and post-judgment interest at the legally allowable limit.

## COUNT IV - DECLARATORY JUDGMENT AND RELIEF

117.    Plaintiff restates and incorporates by reference all preceding allegations.

118.    This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether or not further relief is or could be claimed.

119.    A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

120.    Plaintiffs and members of the proposed class have complied with all relevant conditions precedent in their contracts.

121.    Plaintiffs seek, personally and on behalf of the proposed class, a declaration that State Farm's property insurance contracts prohibit the deduction of repair and replacement costs when adjusting losses under the methodology employed herein.

122.    Plaintiffs seek, personally and on behalf of the proposed class, a declaration that building limits and all other applicable policy proceeds are to be paid by State Farm for a constructive total loss of a property in the same manner as a physical total loss of a property under the policies of insurance issued by State Farm to the Plaintiffs and the proposed class members.

123.    Plaintiffs further seek, personally and on behalf of the proposed class, any and all equitable relief available under the law that the Court deems necessary and proper to the administration of justice, including, but not limited to, identifying and locating policyholders, and notifying the same of the circumstances complained of and the restoration of their rights and remediation of their losses, and preclusion by State Farm in engaging in the conduct described herein, as may be permitted by law.

124.    Plaintiffs and members of the proposed class have suffered significant injuries and damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Lori Ward and Shelia Franklin, individually and on behalf of all others similarly situated, respectfully request that this Court:

    a.  Enter an order certifying this action as a class action under Rule 23(a), (b)(2), (b)(3) and/or (c)(4), Fed. R. Civ. P., appointing Plaintiffs as the representatives of the class, and appointing Michael D. Greer as counsel for the class;

    b.  Enter a declaratory judgment, declaring that State Farm's property insurance contracts prohibit the deduction of repair and replacement costs when adjusting losses under the methodology employed herein;

    c.  Enter a declaratory judgment, declaring that State Farm's property insurance contracts prohibit the undervaluing, manipulation or unreasonable depreciation of claims such as the Plaintiffs;

    d.  Enter a declaratory judgment, declaring that building limits and all other applicable policy proceeds are to be paid by State Farm for a constructive total loss of a property in the same manner as a physical total loss of a property under the policies of insurance issued by State Farm to the Plaintiffs and the proposed class members;

    e.  Enter a judgment in favor of Plaintiffs and the proposed class members, against State Farm for any and all equitable relief available under the law

that the Court deems necessary and proper to the administration of justice, including, but not limited to, identifying and locating policyholders, and notifying the same of the circumstances complained of and the restoration of their rights and remediation of their losses, and preclusion by State Farm of engaging in the conduct described herein, as may be permitted by law;

f.  Enter a preliminary and/or permanent injunction and equitable relief against State Farm and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein;

g.  Enter an order that State Farm specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

h.  Award compensatory damages to Plaintiffs for their individual claims for the amount they are owed pursuant to the Policy as a result of the loss described herein;

i.  Award compensatory damages for all sums undervalued, manipulated or unreasonably depreciated by State Farm under the policy, along with

prejudgment interest on all such sums, to Plaintiffs and members of the class;

j.  Award extra-contractual damages for State Farm's willful, wanton, reckless, grossly negligent, and bad faith conduct, which rose to the level of an independent tort;

k.  Award punitive and exemplary damages for State Farm's tortious, malicious, willful, wanton, reckless, grossly negligent, and bad faith conduct which arose to the level of an independent tort;

l.  Award reasonable attorney's fees;

m. Award costs, expenses, and disbursements incurred herein by Plaintiffs and members of the class;

n.  Award pre- and post-judgment interest; and

o.  Grant such further and additional relief as the Court deems necessary and proper.

Plaintiffs further demand trial by jury.

This the 17th day of May, 2024.

Respectfully submitted,

LORI WARD AND SHEILA
FRANKLIN, PLAINTIFFS, Individually
and on behalf of all others similarly
situated


BY /s/ *Michael D. Greer*
        MICHAEL D. GREER
        MSB# 5002
        Counsel for Plaintiffs


GREER, RUSSELL, DENT & MOORE, PLLC
POST OFFICE BOX 907
TUPELO, MS  38802
TELEPHONE:  (662) 842-5345
FAX:  (662) 842-6870
EMAIL:  mgreer@greerlawfirm.com